UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
EARL G. MCMANN,
         DEBTOR.
_____

JLMA ASSET MANAGEMENT, LLC,
         PLAINTIFF,

v.

EARL G. MCMANN,
         DEFENDANT.
_____

Chapter 7
Case No. 07-15018 -WCH

Adversary Proceeding
No. 07-01412

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the Complaint filed by JLMA Asset Management, LLC (the "Plaintiff") objecting to the discharge of certain debts pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).[1] The Plaintiff argues that the Debtor, through his corporation Wizard Custom Homes, Inc. ("Wizard"), falsely represented that he would build a two-building home for the Plaintiff in Fort Myers, Florida and misappropriated construction deposits to the detriment of the Plaintiff. For the reasons set forth below, I will enter judgment in favor of the Debtor.

---

[1] Complaint, Docket No. 1; Argument, Docket No. 93 at 10.

1

## II. BACKGROUND

Prior to 2006, the Debtor was a representative, officer, and director of Wizard, a Florida corporation engaged in the construction of residential dwellings.[2] The Debtor was also "qualifying agent" of Wizard pursuant to Florida law.[3] The Plaintiff is a Florida limited liability company formed for the purpose of constructing the home in question.[4] Its officers include Mr. Josef Strauss ("Mr. Strauss") and his wife, Laura Strauss.[5] Mr. Strauss contacted the Debtor after seeing an advertisement for Wizard in a home magazine and the two met several times to negotiate an agreement (the "Contract") whereby Wizard would construct a two-building home for the Plaintiff.[6] They agreed that Wizard would build the home in exchange for $600,000, paid according to the following schedule:

> The reduced price of the home is dependent upon the following criteria: Deposit of $250,000 will be issued at the time of contract signing. The remaining balance of $350,000 will be issued accordingly: $ [sic] $200,000 upon the new home completed at the "Dry in Stage". [sic] The "Dry in Stage" will be defined as walls, roof sheathed and all windows installed, $150,000.00 at the time of Certificate of Occupancy issuance to Owner.[7]

---

[2] Joint Pre-Trial Statement, Docket No. 86 at 1.

[3] Transcript, Docket No. 90 at 46-47.

[4] Transcript, Docket No. 90 at 7.

[5] *Id.*

[6] *Id.* at 8. I note that the copy of the Contract submitted at trial is initialed, but not signed by the Plaintiff. Nonetheless, the Plaintiff submitted the Contract into evidence and testified that it is a true and final copy of the agreement. It is signed by the Debtor and under Florida law, an agreement is generally enforceable if it is signed by the party against whom the contract is sought to be enforced. *See Dodge of Winter Park, Inc. v. Morley,* 756 So. 2d 1085, 1085-1086 (Fla. Dist. Ct. App. 2000); *Rohlfing v. Tomorrow Realty & Auction Co., Inc.*, 528 So. 2d 463, 465 (Fla. Dist. Ct. App. 1988).

[7] Plaintiff's Exhibit 1 at ¶ 3-4.

Mr. Strauss testified that he was eager to have the home built quickly and therefore agreed to give the Debtor a "larger than usual deposit" in exchange for the promise of "great savings" and faster construction.[8] Strauss also testified that when he requested that the Debtor provide a performance bond to ensure completion of the home, the Debtor refused on the grounds that Wizard was too small and a performance bond was too costly.[9] As a substitute, the parties agreed to the following "penalty clause":

> Construction on the residence shall be completed within twelve months, excluding delays caused by strikes, material shortages, weather, and acts of God, from the beginning of construction. Beginning of construction shall be the date of contract signing and issuance of the initial deposit of $250,000.00. A penalty of $300.00 per day will be assessed [against Wizard] if the actual construction time exceeds the twelve month construction period barring an exclusions stated above. In reverse, the owner will be assessed $300.00 per day for each day sooner than the ~~twelve~~[10] ten month construction period. Construction time will end when the Certificate of Occupancy for the new home is issued. The time frame of two weeks from document submittal to the Building Permit Licensing Authority for the building permit issuance will be in place. If the actual building permit issuance is beyond the two-week time frame for actual construction to proceed, the extra time it take for issuance of the building permit will be added to the time frame for construction. [Wizard] will issue written documentation to the owner for the date of submittal.[11]

The Contract also contains the following waiver:

> PURSUANT TO SECTION 501.1375, FLORIDA STATUTES, IF CONTRACTOR BUILDS MORE THAN TEN (10) RESIDENTIAL UNITS PER YEAR, THE BUYER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSI [SIC] FUNDS (UP TO 10 PERCENT OF THE PURCHASE PRICE) DEPOSITED IN AN ESCROW ACCOUNT. THE OWNER RIGHT [sic] MAY WAIVE THIS, IN

---

[8] Transcript, Docket No. 90 at 9.

[9] *Id.* at 11.

[10] On the copy of the Contract submitted at trial, "twelve" is stricken and "ten" written in below. The change was initialed in the margin by Mr. Strauss. *See* Transcript, Docket No. 90 at 20.

[11] Plaintiff's Exhibit 1 at ¶ 3.

3

WRITING, BY SIGNING THIS AGREEMENT, OWNER DOES HEREBY WAIVE THIS STATUTORY RIGHT.[12]

After the parties executed the Contract on May 1, 2005, Mr. Strauss or the Plaintiff paid the $250,000 deposit in three installments made between May 1 and May 9, 2005.[13] Approximately three months later, on August 8, 2005, the Debtor filed applications with the City of Fort Meyers seeking permits to construct the home.[14] Thereafter, Wizard began work on the project, but progressed slowly. Over the five months that followed, Wizard demolished an existing structure on the property, prepared the work site for construction, installed plumbing, and poured slabs for both buildings.[15] The parties offered contradicting testimony as to whether Wizard constructed the walls of the home.[16]

During this time, Mr. Strauss grew increasingly concerned about the pace of construction and was unsure if the home could be completed within the time frame provided for in the Contract.[17] He testified that he saw the Debtor at the worksite only once when he overheard the Debtor and the project foreman having a heated argument wherein the Debtor asked, "[w]hy did you start this job?"[18] No evidence was offered to explain the meaning of this statement.

---

[12] *Id.* at ¶ 26.

[13] Plaintiff's Exhibit 1 at ¶ 3; Transcript, Docket No. 90 at 10.

[14] Plaintiff's Exhibit 2; Transcript, Docket No. 90 at 12-13, 41-43.

[15] Transcript, Docket No. 90 at 14-15.

[16] *Id*. at 14, 40.

[17] *Id.* at 13-14.

[18] *Id.* at 14.

In December 2005, Mr. Strauss received notice of several liens on the property totaling $48,415.21 for supplies and services related to construction of the home.[19] Mr. Strauss or the Plaintiff paid these liens and consulted with an attorney regarding the Contract.[20] Through his attorney, Mr. Strauss contacted the Debtor regarding the liens and status of construction under the Contract. When the Debtor did not respond to the inquiry, Mr. Strauss' attorney requested, via a letter, that Wizard cease construction. Contemporaneously therewith, he filed complaints against Wizard and the Debtor to the Florida Department of Business and Professional Regulation (the "DBPR")[21] and the Florida Attorney General. Sometime thereafter, he filed a civil complaint against the Debtor, Wizard, and the Debtor's wife in Florida state court.[22] That action was stayed as to the Debtor upon the filing of his bankruptcy petition on August 9, 2007, but proceeded against Wizard and the Debtor's wife. The Plaintiff ultimately obtained a judgment of 1.6 million dollars against them.[23]

Evidence presented at trial revealed additional details about Wizard's business affairs during this time. Testimony and records from Wizard's operating account from March, 2005 to May, 2006 indicate that shortly after Wizard received the Deposit, the balance in the account dropped below the amount of the $250,000 deposit and was often below that amount during the

---

[19] Transcript, Docket No. 90 at 15-16; Plaintiff's Exhibit 3.

[20] Transcript, Docket No. 90 at 15-16.

[21] The Florida Department of Business and Professional Regulation is a state agency charged with licensing and regulating businesses and professionals in the state of Florida. Florida Department of Business & Professional Regulation, http://www.myfloridalicense.com/dbpr/adm/AgencyOrganization.html (last visited July 28, 2011).

[22] Transcript, Docket No. 90 at 15-16.; Joint Pre-Trial Statement, Docket No. 86 at 1.

[23] Transcript, Docket No. 90 at 18-19; Joint Pre-Trial Statement, Docket No. 86 at 1.

months in question.[24] A copy of the Debtor's 2005 tax return reveals that the Debtor and his wife received $150,000 income from Wizard in 2005, and the Debtor testified at trial that he used approximately $60,000 from the Wizard operating account to defend various legal actions filed against him personally.[25] Additional testimony revealed that between June, 2004, and April, 2006, seven individuals remitted payments to the Debtor on account of contracts to build homes and that each of these individuals later made complaints to the DBPR, alleging that the Debtor did not complete the homes in question.[26] These complaints led to a series of administrative hearings that resulted in a stipulated agreement whereby the Debtor forfeited his contractor's license and agreed that he would not henceforth apply for another contractor's license, act as a partner, officer, builder, trustee, or be employed in any managerial capacity of a business organization that engages in contracting in the state of Florida.[27] As part of the stipulation, the Debtor agreed that if the allegations were later proven, he would be subject to disciplinary proceedings.[28]

The Plaintiff initiated this adversary proceeding on November 9, 2007, by filing a complaint objecting to the discharge of the Debtor for the debts owed under the Contract.[29] The

---

[24] Transcript, Docket No. 90 at 56-59; Plaintiff's Exhibit 4.

[25] Plaintiff's Exhibit 5; Transcript, Docket No. 90 at 100-101.

[26] Transcript, Docket No. 90 at 69-74.

[27] *Id.* at 75-76.

[28] *Id*. at 79.

[29] Complaint, Docket No. 1. The Complaint contains counts under 11 U.S.C. §§ 523(a)(2) (Count I), 523(a)(6) (Count II), 727(a)(2) (Count III), and 727(a)(5) (Count IV). However, the Joint Pre-Trial Statement, Docket No. 86, para. 4 reserves only the § 523 counts as remaining at issues. Counts III and IV are deemed waived.

6

Debtor filed his answer on January 1, 2010.[30] I entered a Pre-Trial Order on March 2, 2011, and the parties filed a Joint Pre-Trial Statement on April 26, 2011.[31] After a one day trial on May 3, 2011, both parties filed post-trial briefs.[32] On the last page of the Plaintiff's post-trial brief, the Plaintiff included a section titled "Motion That Findings Conform to the Proof and Debts of Defendant to Plaintiff Found Not Dischargeable under 11 U.S.C. § 523(a)(4)."[33] By way of this "motion," the Plaintiff requests that I conform the pleadings to the evidence presented at trial and find the debts non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).[34] The Debtor opposes this request.

### III. POSITIONS OF THE PARTIES

#### The Plaintiff

On the threshold issue of personal liability, the Plaintiff argues that the Debtor has failed to demonstrate that Wizard was a duly organized corporation. In the alternative, the Plaintiff asserts that if Wizard is a corporation, piercing the corporate veil is warranted because Wizard is an "alter-ego" of the Debtor and the Debtor diverted corporate funds for personal use when he used $60,000 from Wizard's operating account to defend legal actions filed against him personally.

With respect to dischargeability, the Plaintiff argues that the debts are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) because the Debtor either falsely represented that Wizard

---

[30] Answer, Docket No. 9.

[31] Pre-trial Order Docket No. 85; Joint Pre-Trial Statement, Docket No. 86.

[32] Argument, Docket No. 90; Post-Trial Brief, Docket No. 94.

[33] Argument, Docket No. 93 at 10.

[34] *Id.*

7

would perform under the Contract, or made such representation in reckless disregard of Wizard's financial inability to perform under the Contract.[35] To demonstrate that the Debtor intended to deceive Mr. Strauss, the Plaintiff points to the DBPR proceedings against the Debtor, the escrow waiver in the Contract, and to bank statements of Wizard's operating accounts that he contends demonstrated that the Debtor spent the $250,000 deposit on other projects and did not have sufficient capital to complete the home. Finally, to support his claim under 11 U.S.C. § 523(a)(2), the Plaintiff points to Florida statute 489.126, "Moneys received by contractors," which provides, in relevant part:

> contractor who receives, as initial payment, money totaling more than 10 percent of the contract price for . . . construction to residential real property must: (a) Apply for permits necessary to do work within 30 days after the date payment is made, except where the work does not require a permit under the applicable codes and ordinances.[36]

The Plaintiff argues that the Debtor's failure to comply with this provision indicates that he did not intend to perform under the Contract.

The Plaintiff contends that the debts are non-dischargeable under 11 U.S.C. § 523(a)(6) because the Debtor's personal use of corporate funds was "willful and malicious" and ultimately damaged the Plaintiff's property.[37] Finally, the Plaintiff argues that because the Debtor was a fiduciary and misappropriated corporate funds, I should amend the pleadings to conform to the evidence presented at trial and find the debts non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

---

[35] Argument, Docket No. 93 at 5-9.

[36] Fla. Stat. § 489.126 (1996).

[37] Argument, Docket No. 93 at 9.

8

The Debtor

In response to the Plaintiff's piercing the corporate veil argument, the Debtor argues first that the question of Wizard's corporate status is procedurally improper because it was not presented as an issue to be determined on the Joint Pre-Trial Statement.[38] With respect to the substance of the claim, the Debtor argues that both this and the claim of non-dischargeability under 11 U.S.C. § 523(a)(6) are deficient because there is no evidence that the Debtor had fraudulent intent when the parties entered into the Contract. On the issue of non-dischargeability pursuant to 11 U.S.C. § 523(a)(6), the Debtor contends that the Plaintiff has failed present evidence that he intended to inflict a willful and malicious injury. Finally, with respect to 11 U.S.C. § 523(a)(4), the Debtor argues that the request to conform the pleadings to the evidence is procedurally improper under Federal Rule of Civil Procedure 15(b) and that he would suffer undue prejudice if the motion is granted.

## IV. DISCUSSION

With respect to the corporate status of Wizard, I find that even if I were to set aside the corporate form and hold the Debtor personally liable for the debts that Wizard owes to the Plaintiff, it would not change the outcome of this case because the Plaintiff has failed to prove the debt is non-dischargeable under any theory.

A. Non-dischargeability Under 11 U.S.C. § 523(a)(2)

Section 523(a)(2) provides, in relevant part,

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

---

[38] Post-Trial Brief, Docket No. 94 at 3.

>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .[39]

To establish that a debt is non-dischargeable under this section, the Plaintiff satisfy the test set forth by the United States Court of Appeals for the First Circuit in *Palmacci v. Umpierrez*[40] by showing, on a preponderance of the evidence, that

> (1) the debtor made a false representation, (2) with fraudulent intent, i.e., "scienter," (3) and intent to induce the plaintiff to rely on the misrepresentation, and (4) the misrepresentation does induce reliance, (5) which is justifiable, and (6) which causes damage (pecuniary loss).[41]

The First Circuit has subsequently amended the first element of the test such that it now includes a false representation "made in reckless disregard of the truth."[42] "The first two elements of the *Palmacci* test describe the conduct and scienter required to show fraudulent conduct generally, the last four embody the requirement that the claim of the creditor arguing non-dischargeability in an adversary proceeding must arise as a direct result of the debtor's fraud."[43] A successful claim under 11 U.S.C. § 523(a)(2) requires proof that the debtor intended to deceive the plaintiff.[44]

As to the first element of the test, the Plaintiff argues that the Debtor made a false representation that he would build a home for the Plaintiff according to the terms of the

---

[39] 11 U.S.C. § (a)(2)(A). The Plaintiff does not argue that the debt is non-dischargeable pursuant to 11 U.S.C. § (a)(2)(B) or (C).

[40] *Palmacci v. Umpierrez*, 121 F.3d 781 (1st Cir. 1997).

[41] *Id.* at 787.

[42] *In re Spigel*, 260 F.3d 27, 32 (1st Cir. 2001).

[43] *Id.*

[44] *Youssef v. Fogarty (In re Fogarty)*, No. 08-1112, 2010 WL 916818 at *9, (Bankr. D. Mass. Mar. 10, 2010).

Contract.[45] Nonetheless, the Plaintiff has failed to produce sufficient evidence that the representation was false, i.e., that Wizard would not have completed construction of the home within twelve months if the Plaintiff not repudiated the agreement. The Plaintiff's argument is undercut by the evidence presented that, despite delays, Wizard nonetheless began constructing the home. At a minimum, the Debtor or Wizard obtained work permits, demolished an existing structure on the property, prepared the work site for construction, installed plumbing, and poured slabs for both buildings.[46] To the extent that work proceeded slowly or was delayed, the "penalty clause" and building permit language contained in paragraph three of the Contract indicate that the parties anticipated the possibility of delay and there is no evidence that the Debtor had abandoned the project. Furthermore, the record indicates that the Plaintiff repudiated the Contract and requested that the Debtor cease construction approximately five months after the Contract was executed. This was less than half the time agreed to by the parties for completion of the home.

To the extent that the Plaintiff argues that the Debtor made his representation "in *reckless disregard of the truth* regarding the financial ability to complete the project," the information presented at trial regarding Wizard's financial condition is insufficient to determine that Wizard was financially incapable of completing the project.[47] Only speculative information was provided regarding how much money was spent building the home and no records regarding Wizard's accounts receivable or liabilities was presented at trial. Therefore, I do not have a full picture of Wizard's financial condition at the time of the events in question and cannot reasonably conclude

---

[45] Argument, Docket No. 93 at 5.

[46] Transcript, Docket No. at 14-15.

[47] Argument, Docket No. 90 at 7 (emphasis original).

that Wizard was financially incapable of completing the project according to the terms of the Contract.

Even if the representation was false, the Plaintiff has not demonstrated that the Debtor had the requisite scienter to satisfy the *Palmacci* test. To prove scienter, the Plaintiff points to the series of complaints levied against the Debtor to the DBPR, contending that because the representations made in connection with the Contract were made "right in the middle of this series of homes committed to but not built," then "it is a reasonable inference that" the Debtor did not intend to perform.[48] Nonetheless, the limited record with respect to this matter indicates that the DBPR did not make findings of fact and the settlement agreement whereby the Debtor forfeited his contracting license was not entered into evidence.[49] Based on the scant information available to me, I cannot infer fraudulent intent from those proceedings. The Plaintiff also argues that the inclusion of the escrow waiver in paragraph 26 of the Contract indicates that the Debtor "intended to put [the Plaintiff's $250,000 deposit] to use other than to build a home for [the Plaintiff]."[50] On the contrary, this provision specifically *permits* Wizard to co-mingle the $250,000 deposit with other funds and eliminates the expectation that those specific funds would be spent exclusively on the Debtor's project.

In light of the foregoing, I find that the Plaintiff has failed to satisfy the first and second elements of the *Palmacci* test. Because a finding of non-dischargeability under 11 U.S.C. § 523(a)(2) requires a showing of all six elements of the test, I need not reach the merits of the remaining elements. Accordingly, I will enter judgment in favor of the Debtor as to this count.

---

[48] Argument, Docket No. 93 at 6.

[49] *See* Debtor's testimony that "if the allegations were proven," he would be subject to disciplinary action. Transcript, Docket No. 90 at 79.

[50] Argument, Docket No. 90 at 6.

B. Non-dischargeability Under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge debts of an individual debtor "for willful and malicious injury by the debtor to another entity or to the property of another entity."[51] This section covers intentional torts wherein the actor intends the consequences of his or her act and does, in fact, cause the intended injury.[52] "Debts arising from reckless or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[53] The Plaintiff concedes that 11 U.S.C. § 523(a)(6) is typically "employed regarding debts that come as the result of tortious activity that causes damage," but nonetheless asserts that the debts are non-dischargeable under this section because the Debtor "placed at least $60,000 of [P]laintiff's funds beyond the reach of [P]laintiff by improperly using them for his own purposes . . . [and] this action was willful and malicious and ultimately damaged the property of [P]laintiff, making his debt to [P]laintiff non-dischargeable."[54] The Debtor testified that he used corporate funds to defend legal actions filed against him personally, but there is no indication he did so with specific intent to injure the Plaintiff. Therefore, I will enter judgment in favor of the Debtor under this count.

D. "Motion to Conform"

Buried in the Plaintiff's post-trial brief is a request that I amend the pleadings to conform to the evidence presented at trial and enter an order that the debts owed to the Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). I note that this "motion" does not conform with the Federal Rules of Civil Procedure or the Local Bankruptcy Rules for the District of

---

[51] 11 U.S.C. § 523(a)(6).

[52] *Fogarty,* 2010 WL 916818 at *8-9 (*citing Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).

[53] *Geiger*, 523 U.S. at 64.

[54] Argument, Docket No. 93 at 9.

13

Massachusetts, both of which provide specific requirements for proper service of pleadings and notices in this district.[55] In addition to these rules, motions to conform fall under the purview of Federal Rule of Civil Procedure 15 which provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move — at any time, even after judgment — to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.[56]

When considering a Rule 15(b) motion, the basic question is one of fairness wherein I must determine whether the non-moving party had "fair notice that the claims at issue were being pursued, and an opportunity to meet them, or did they consent, expressly or by implication, to trial of those issues."[57] Consent can be either express or implied and may be implied if a party acquiesces in the introduction of evidence at trial which is relevant only to that issue, "but the introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case."[58]

Here, non-dischargeability pursuant to 11 U.S.C. § 523(a)(4) was not contained in the pleadings or the Joint-Pre Trial Statement and there is no evidence that the Debtor consented to trial of this issue at any point during these proceedings. The Plaintiff concedes that "[w]hile admittedly the question of (a)(4) was not raised in the Pretrial Statement, two matters *arose*

---

[55] *See* Fed. R. Civ. Pro. 5, made applicable in bankruptcy cases by Fed. R. Bank. Pro. 7005, M.L.B.R. 9013-3.

[56] Fed. R. Civ. P. 15, made applicable in adversary proceedings by Fed. R. Bankr. P. 7015.

[57] *Byers v. Conley (In re Byers)*, 304 B.R. 1, 7 (B.A.P. 1st Cir. 2004).

[58] *Id.*

*during trial.*[59] The "two matters" refers to the Debtor's status as qualifying agent of Wizard and his personal use of corporate funds. When these matter arose at trial, Plaintiff's counsel did not indicate that they were relevant to an 11 U.S.C. § 523(a)(4) claim and the Debtor's counsel did not proceed in a manner that indicated he was aware that an (a)(4) claim was being made. Additionally, these facts are also relevant to the pleaded claims. The first mention of 11 U.S.C. § 523(a)(4) was on the last page of the Plaintiff's post-trial brief. There is no indication that the Debtor was on notice of the Plaintiff's intention to bring a claim under 11 U.S.C. § 523(a)(4) at any time before the filing of this brief. Therefore, amending the pleadings to conform to the evidence presented at trial would unduly prejudice the Debtor.

## VI. **CONCLUSION**

In light of the foregoing, I will enter judgment in favor of the Debtor on all counts of the complaint.

                                                                  _____
                                                                  William Hillman
                                                                  United States Bankruptcy Judge

Dated: August 3, 2011


Counsel Appearing:         David Shestokas, Marcus Clegg & Mistretta, P.A., Portland, ME
                                           for the Plaintiff
                                           David G. Baker, Law Offices of David G. Baker, Boston, MA
                                           for the Debtor

---

[59] Argument, Docket No. 93 at 10 (referring to the Debtor's status as qualifying agent of Wizard and admission that he used corporate funds for personal expenses)(emphasis added).